UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS F. ISLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-00860-MPB-SEB |
| | ) |
| MED-1 SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| TARA GERBER, | ) |
| | ) |
| Interested Party. | ) |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on the parties' cross motions for summary judgment. Plaintiff Thomas Isler has brought this action against Defendant MED-1 Solutions, LLC ("MED-1") alleging violations of the Fair Debt Collect Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* For the reasons set forth below, MED-1's motion for summary judgment (Docket No. 32), filed on April 10, 2019, is **GRANTED.** Mr. Isler's cross motion for partial summary judgment on liability (Docket No. 35), also filed on April 10, 2019, is **DENIED.**

### I.  Factual Background

The majority of the facts of this case are undisputed.

On May 24, 2016, MED-1, a medical debt collector, filed a small claims lawsuit against Mr. Isler in Washington Township Small Claims Court ("the state court"), captioned, *MED-1 Solutions, LLC v. Thomas Fiske Isler*, Cause No. 49k07-1605-SC-02319 ("the state court lawsuit"). (Docket No. 33-1; Docket No. 35-1 at ECF p. 1). MED-1 sought to collect $4,098.60 from Mr. Isler for unpaid medical services and reasonable attorney fees. (Docket No. 33-1). On

July 19, 2016, counsel for MED-1 and Mr. Isler appeared before the state court, which entered an order that Mr. Isler "agrees to $40/mon start Aug 20 and continuing on the same day of each successive calendar month. If [Mr. Isler] remains current, then no Judgment will be entered." (Docket No. 33-2; Docket No. 35-1 at ECF p. 1). The case was continued until October 4, 2016 with a note that read "If [Mr. Isler] current [Mr. Isler] need not to appear." (*Id.*).

On October 4, 2016, MED-1 counsel and Mr. Isler again appeared before the state court, which entered an order that "[c]ontinued [the matter] indef. so long as payments made as indicated previously under paymplan." (Docket No. 33-3; Docket No. 35-1 at ECF p. 1). However, Mr. Isler's payments did not continue as directed by the payment plan. His February 20, 2017, payment was not received until March 2, 2017. (Docket No. 33-4 at ECF pp. 8–9; Docket No. 33-5 at ECF pp. 1–2;[1] Docket No. 35-1 at ECF p. 2). He then missed his March 20 and April 20, 2017, payments. (*Id.*).

On May 31, 2017, MED-1 filed an Amended Notice of Claim. (Docket No. 33-6; Docket No. 35-1 at ECF p. 2). The case was reset for July 25, 2017, and Mr. Isler was summonsed to appear. (*Id.*).

This is where the two parties disagree on the facts. Mr. Isler avers that he and counsel for MED-1 renewed their previous payment arrangement. (Docket No. 35-1 at ECF p. 2). Mr. Isler specifically averred that counsel required his payments be made by automatic ACH withdrawal from his bank account and in exchange MED-1 would reinstate the previous agreement that no judgment would be taken as long as Mr. Isler was current on his payments. (*Id.*). MED-1 does not agree that this Agreement was reached. (Docket No. 38 at ECF p. 2).

The parties do agree that on July 25, 2017, counsel for MED-1 and Mr. Isler made a

---

[1] MED-1 cites pages eight and nine of this exhibit, yet it is only a two-page exhibit.

phone call to MED-1's office from the state court to set up a monthly auto payment plan for $40 per month, starting August 20th. (Docket No. 33 at ECF p. 3; Docket No. 34, *Notice of Manual Filing of Audio CD-R*; Docket No. 35-1 at ECF p. 2). MED-1's rep asked "is there anything else I need to do for you" to which Mr. Isler responded, "no." (Docket No. 33 at ECF p. 3; Docket No. 34; *Phone Recording July 25, 2017 (Exhibit G)*). On July 25, 2017, MED-1 and Mr. Isler appeared in state court for the scheduled status hearing in the state court lawsuit; an order was entered continuing the cause until January 23, 2018. (Docket No. 33-7). Unlike the July 19, 2016 order, this order did not contain any reference to a payment plan or Mr. Isler's attendance at future hearings. (*Id.*).

On January 23, 2018, MED-1 appeared by new counsel at the scheduled hearing in the state court lawsuit, but Mr. Isler failed to appear. (Docket No. 33-8; Docket No. 35-1 at ECF p. 2).[2] The state court then entered a judgment in favor of MED-1 that reads: "Accordingly, the Court now orders: That judgment is rendered in favor of the Plaintiff for the sum of $3,0961.60 and attorney fees of $375 and prejudgment interest of $0 for a total judgment of $3,466.60 plus costs and post judgment interest at 8% per annum." (*Id.*).

Mr. Isler believed a mistake was made and he contacted MED-1 and asked that the default judgment be set aside as he was current on his payments. (Docket No. 35-1 at ECF p. 2). MED-1 declined. (*Id.*). Thereafter, Mr. Isler filed an appeal to transfer the case to the superior court for a trial *de novo*. (Docket No. 35-1 at ECF pp. 2–3).

---

[2] Mr. Isler states that he was out-of-state for work from January 21 to January 24, 2018. (Docket No. 35-1 at ECF p. 2). He acknowledges missing the court date, but avers that because his payments were current he believed he could miss the January 23, 2018, court date. (*Id.*).

## II. Standard of Review

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts and draws all reasonable inferences in a light most favorable to the non-moving party. *See id.* at 255. If, after drawing all reasonable inferences from the facts in favor of the non-movant, genuine doubts remain, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). However, neither the mere existence of some alleged factual dispute between the parties, *id.* at 247, nor the existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim that the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Courts often confront cross motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if

that party has satisfied the summary judgment standard. *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008). In determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non movant. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

### III. Discussion

"The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices." *Bass v. Stolper, Koritzinsky, Brester & Neider, SC*, 111 F.3d 1322, 1324 (7th Cir. 1997); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists."). Thus, the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. To ensure compliance with the Act, the court applies an objective test and looks at the debt collector's actions from the perspective of an "unsophisticated consumer or debtor. *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 677 (7th Cir. 2007). "The unsophisticated consumer is 'uninformed, naïve, [and] trusting,' but possesses 'rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences.'" *Id.* at 678 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

Mr. Isler's complaint sets forth that MED-1 violated § 1692f by its July 25, 2017, renewal of the original agreement—which told Mr. Isler that MED-1 would not obtain a

5

judgment against him as long as he was current on payments—to only later obtain a default judgment against him after he did not appear at a state court status hearing, even though he was current on his payments. (Docket No. 1). In its motion for summary judgment, MED-1 argues that Mr. Isler has failed to provide any evidence that the parties had an agreement in place as of January 23, 2018 that provided Mr. Isler need not attend court hearings if he was current on payments. (Docket No. 33 at ECF p. 4). Mr. Isler responds that the undisputed facts establish as a matter of law that the Agreement he references in the complaint exists or, at worst, that there is a genuine dispute as to its existence because none of MED-1's evidence contradicts his affidavit. (Docket No. 39 at ECF p. 2).

      Before the Court turns to the substantive analysis under 15 U.S.C. § 1692f, it must consider a *critical* factual assumption that Mr. Isler relies on. Mr. Isler's argument is that MED-1 *requested* judgment be entered. Yet, the state court's order in question merely enters judgment. It neither references MED-1 requesting judgment be entered or the court entering judgment *sua sponte* due to Mr. Isler's failure to appear after having been ordered to do so. (Docket No. 33-8). Mr. Isler's concludes that, "[S]hortly after January 23, 2018, I learned that a judgment had been taken against me by a new attorney (not Ms. Gerber) for Defendant on January 23, 2018," without any facts establishing that the judgment was "by" MED-1 at the hearing. (Docket No. 35-1 at ECF p. 2). Mr. Isler provides no explanation for how he learned about the judgment, that MED-1 was represented by a new attorney at the hearing, or—critically—that MED-1 *requested* the judgment be entered. Mr. Isler has failed to provide this Court with support as to how he has personal knowledge of these facts given he was not at the hearing where the judgment was entered. *Toro Co. v. Krouse, Kern & Co., Inc.*, 644 F. Supp. 986, 989 (N.D. Ind. Oct. 1, 1986) ("Statements based merely on knowledge and belief do not

6

satisfy the standards of Rule 56(e) requiring personal knowledge."); *see also* Fed. R. Civ. P. 56(c)(4) (An affidavit or declaration used to support or oppose a motion must be made on *personal knowledge*."). MED-1 cannot be responsible for an action the state court took under its own, independent authority. The record lacks admissible evidence to support Mr. Isler's contention that MED-1 requested judgment. Thus, on this basis alone, summary judgment in favor of MED-1 and against Mr. Isler would be appropriate.

Yet, even if the Court construes the state court's January 23, 2018, order to read that MED-1 requested judgment, this would not impact the ultimate ruling. Section 15 U.S.C. § 1692f states in relevant part: "A debt collector may not use *unfair or unconscionable means* to collect or attempt to collect any debt." 15 U.S.C. § 1692f (emphasis added). Unfortunately, the statute does not define the phrase "unfair or unconscionable," and the Seventh Circuit has called the phrase "as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007). The statute provides a non-exhaustive list of eight violations. Subsection (6) is most relevant here. That subsection prohibits "[t]aking or threatening to take any *nonjudicial action* to effect dispossession or disablement of property" under certain circumstances. 15 U.S.C. § 1691f(6)(A)-(C) (emphasis added). The operative phrase, in this instance, is "nonjudicial action." It implies "that state judicial proceedings are outside the scope of § 1692f." *Beler*, 480 F.3d at 475. In *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871 (7th Cir. 2015), the court held that "if state judicial proceedings are outside the scope of § 1692f, then [Plaintiff] does not have a leg to stand on." *Id.* at 875.

In *Bentrud*, the plaintiff did not dispute that he owed money to a creditor, which had assigned collection of that debt to a law firm. *Id.* at 872. The law firm had filed a suit in state superior court to recover the debt that plaintiff owed. *Id.* After defendant-law firm filed a motion

7

for summary judgment in state court, plaintiff-debtor requested arbitration pursuant to his debtor-creditor agreement. *Id.* The state court granted plaintiff-debtor's request, provided him thirty days to initiate arbitration, and denied defendant-law firm's motion for summary judgment. *Id.* For a variety of reasons arbitration did not occur. *Id.* Then defendant-law firm filed a second motion for summary judgment, which led plaintiff-debtor to file the FDCPA case in federal court, where he argued that the filing of the second motion for summary judgment constituted an "unfair or unconscionable" debt collection practice in violation of § 1692f. *Id.* at 873. The district court granted the defendant-law firm's motion for summary judgment, which was upheld by the Seventh Circuit. *Id.* The Seventh Circuit "very much doubt[ed] that a state court motion for summary judgment—filed to collect an overdue credit card debt—could qualify as an unfair or unconscionable act under the FDCPA." *Id.* at 875.

Moreover, in *Bentrud*, the Seventh Circuit addressed the plaintiff-debtor's invocation of his arbitration provision, which provided: "'If you or we elect arbitration of a claim, neither you nor we will have the right to pursue that claim in court or before a judge or jury.'" *Id.* It held that "[t]he FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law." *Id.* at 875 (citing *Beler*, 480 F.3d at 474). But that is what Mr. Isler is attempting to do here. He asks this court to use the FDCPA to enforce an Agreement between the debt collector and himself. This argument was rejected not only in *Bentrud* but also in *Beler*.[3] In *Beler*, the appellant theorized that it was "'unfair' or 'unconscionable' for a debt collector to violate . . . rule[s] of positive law." *Beler*, 480 F.3d at 473. Specifically, the appellant faulted a

---

[3] Neither side addresses this line of case law in their briefs. Plaintiff's counsel does not address *Bentrud* despite the fact that he was the counsel of record for Bentrud both at the trial court and the Seventh Circuit. *See Bentrud*, 794 F.3d at 871; *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, Case No. 1:12-cv-1340-WTL-DML, 2014 WL 2195741 (S.D. Ind. May 27, 2014).

debt collector law firm (like MED-1 here) for violating state laws. *Id.* at 473–474. The Seventh Circuit denied the claim, noting that the laws implicated provided remedies for violations. *Id.* In *Bentrud*, the appellant was concerned about the debt collector resuming litigation after he elected arbitration—which the Seventh Circuit characterized as a "procedural oddity, at worst." *Bentrud*, 794 F.3d at 875. The Seventh Circuit reasoned that if Bentrud sought relief—"his remedy sounds in breach of contract, not the FDCPA." *Id.* ("A contrary ruling would require us to declare that adherence to an arbitration provision in a contract, even in the face of a state court order to the contrary, is essential to fair debt collection. This we will not do.") (internal citations omitted).

Here, this case is akin to *Bentrud*. Mr. Isler argues that on July 25, 2017, counsel for MED-1 and he reinstated the previous, July 19, 2016, Agreement that "no judgment would be taken against me as long as I was current on my payments." (Docket No. 35-1 at ECF p. 2). That MED-1 disputes the existence of the July 25, 2017, Agreement is of no moment. While this makes its existence a disputed fact, it is not a material fact that will prevent summary judgment. Like *Bentrud*, if Mr. Isler is concerned about MED-1 requesting (and receiving) a judgment for his failure to appear at the January 23, 2018, state court status hearing due to the July 1, 2017, Agreement, then Mr. Isler's remedy sounds in breach of contract.

Moreover, Mr. Isler's argument, that pursuant to the Agreement as long as he was current on his payment no default judgment could ever be entered against him, implies that two parties can (without a court's agreement) waive one of those party's obligation to comply with a court order. Of course that cannot be the case. Mr. Isler's state court case was first noticed on May 24, 2016, and Mr. Isler was summonsed to appear before the state court on July 19, 2016. (Docket No. 33-1). The state court's order at that initial hearing, among other things, continued the matter until October 4, 2016, but noted that Mr. Isler need not appear if he was current on his payments.


(Docket No. 33-2). No party disputes that Mr. Isler was current as of October 4, 2016, yet he appeared anyway, and the state court continued the matter indefinitely as long as Mr. Isler continued to pay as indicated under the previous plan. (Docket No. 33-3). When Mr. Isler failed to make payments in accordance with the original agreement MED-1 filed an Amended Notice on May 31, 2017, and summonsed Mr. Isler to appear at a July 25, 2017, hearing in the state court litigation. (Docket No. 33-6). Mr. Isler appeared, and the state court continued the cause to January 23, 2018, *without further order*. (*Id.*). Despite no relief of appearance from the state court, it is undisputed Mr. Isler did not appear for the January 23, 2018 hearing. (Docket No. 33-8). The state court noted that "within the knowledge of those present, [Mr. Isler] is not under legal disability and has sufficient understanding to realize the nature and effect of the [Amended] Notice of Claim." (*Id.*).

It was permissible for MED-1 to request judgment against Mr. Isler. Rule 10(B) of the Indiana Rules of Court Small Claims provides that "[i]f the defendant fails to appear at the time and place specified in the notice of claim or for any continuance thereof, the court may enter a default judgment against him." Ind. Rules of Court Small Claims 10(b). Indeed, if it did not, then MED-1's counsel may have been out of turn with one of the primary pillars of effective representation—diligence. *See* Indiana Rules of Prof'l Conduct R. 1.3 (2019). Even assuming the July 25, 2017, Agreement occurred, as the Court must when considering MED-1's summary judgment, MED-1's counsel made a reasonable choice as an advocate for its client pursuant to Rule 10(B) in requesting an entry of judgment after Mr. Isler failed to appear. That choice does not equate to an unfair or unconscionable means of attempting to collect debt. *See Bentrud*, 794 F.3d at 876. The agreement, as averred by Mr. Isler, did not address whether Mr. Isler was relieved of his obligations to appear for court ordered status hearings. Nor could it, unless the

state court granted leave that it would waive Mr. Isler's appearance at future hearings. Mr. Isler indicates that he has sought relief in state court to have the judgment set aside. That is a more appropriate avenue for Mr. Isler to seek relief. The Seventh Circuit has made clear that the FDCPA is not "an enforcement mechanism for matters governed by state law." *Id.*

Mr. Isler cites a Ninth Circuit case, *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994). In *Fox*, which is not binding on this Court, the plaintiffs defaulted on their credit card debt, which was referred to Citicorp Credit Services, Inc. ("Citicorp") for collection. *Id.* Citicorp brought a suit against the plaintiffs. *Id.* at 1510. In conjunction, the parties reached a stipulated judgment under which the plaintiffs were to pay $100 per month to pay off their debt. *Id.* The evidence showed that plaintiffs did not meet these initial payments and then a number of back-and-forth communications occurred between plaintiffs and Citicorp that are irrelevant to *Fox*'s comparison to Mr. Isler's case. *Id.* Of relevance, a Citicorp representative sent a request to its counsel "to proceed with garnishment if Citicorp did not instruct him otherwise by January 30, 1990." *Id.* Then, despite that plaintiffs were current on their payments, Citicorp did not contact counsel; thus, he proceeded with garnishment in February 1990, which was eventually served on plaintiff's employer on March 8, 1990. *Id.* at 1511. Later that same day counsel realized plaintiffs were current in their payments and quashed the writ of garnishment. *Id.* The plaintiffs brought, among other FDCPA claims, a claim under 15 U.S.C. § 1692f alleging that filing a writ of garnishment when plaintiffs were current in payments was unfair or unconscionable. *Fox, 15 F.3d* at 1511. In reversing the trial court's summary judgment for Citicorp. the Ninth Circuit addressed the § 1692f claim in two paragraphs of its analysis. *Id.* at 1516–17. It recognized that "[t]he conduct alleged . . . does not fall neatly within [1692f]." *Id.* at 1516. The Ninth Circuit then held, without further explanation, "a jury could rationally find the filing of an application

11

for a writ of garnishment when [plaintiffs] were current in payments demanded by Citicorp agents to constitute an unfair or unconscionable means of collection or attempted collection of a debt under section 1692f." *Id.* at 1517.

The Court does not follow *Fox* several reasons. The Seventh Circuit case law, discussed in detail above, is not only binding on this Court, but also provides a thorough analysis of § 1692f, where *Fox* does not. Mr. Isler reads, *Todd v. Collecto, Inc.*, 731 F.3d 734 (7th Cir. 2013), which cites *Fox*, for more than what it is. *Todd* merely cites it as an example of what courts have found *may* violate § 1692f. *Id.* at 739. The opinion provides no indication whether the Seventh Circuit agrees with *Fox* and the Seventh Circuit ultimately held that Mr. Todd did not state a plausible claim for relief under § 1692f. *Id.* Moreover, the question of whether it is unfair or unconscionable to issue a writ of garnishment to collect plaintiff's property to satisfy a judgment where plaintiff was already satisfying the judgment is a different question than whether it is unfair or unconscionable to seek a judgment on a debt that plaintiff was in the process of repaying. Contrary to Mr. Isler's arguments the similarities between his case and *Fox* are not "unmistakable," particularly in light of the binding case law, unaddressed by Mr. Isler, as discussed herein.

## IV. Conclusion

Because Mr. Isler has failed to establish a genuine issue of material fact as to its claims against MED-1, the Court finds that summary judgment in favor of MED-1 is appropriate. MED-1's request ([Docket No. 32](#)) is **GRANTED**, and Plaintiff's motion for summary judgment ([Docket No. 35](#)) is **DENIED**.

**SO ORDERED** this 3rd day of October, 2019.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Service will be made electronically on all ECF-registered counsel of record via email generated by the court's ECF system.